EL PUEBLO DE PUERTO RICO, demandante y recurrido, *v.* JOSÉ E. TORRES ALBERTORIO, acusado y peticionario.

*Número:* O-82-723    *Resuelto:* 29 de febrero de 1984

*José E. Ayora Santaliz,* abogado del peticionario; *Miguel Pagán, Procurador General Interino,* y *Lirio Bernal, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

■ El aquí peticionario fue acusado de apropiarse ilegalmente de un vehículo de motor. Como consecuencia de su arresto y de la rutina en el proceder policíaco en estos casos se tomaron fotografías de su persona y sus huellas dactilares. Sometido a juicio fue absuelto por un jurado. Solicitó entonces del tribunal que se ordenara a la Policía que le devolviera las fotografías y huellas digitales tomadas. El tribunal denegó su solicitud y para revisar dicha resolución se ha instado el presente recurso.(1) Resolvemos que la retención de dichas fotografías y huellas digitales por la Policía una vez absuelto el imputado y sin que se demuestre justificación alguna para ello por el Estado viola su derecho a la intimidad consagrado en el Art. II, Sec. 8 de nuestra Constitución. La resolución recurrida no puede prevalecer. Así lo intimamos en resolución sobre mostración de causa. No nos persuade la comparecencia que ha hecho el Procurador General en defensa de la resolución recurrida.

■ Debemos reconocer, antes de abordar los méritos de la cuestión aquí planteada, que la toma de fotografías y huellas dactilares a las personas detenidas para responder de delito público constituye una práctica aceptable como parte de la labor investigativa de la Policía. *Archevali* v. *E.L.A.*, 110 D.P.R. 767, 771 (1981). Véase Comentario, *Retention and Dissemination of Arrest Records: Judicial Response*, 38 U. Chi. L. Rev. 850 (1971). Es permisible por su doble propósito de identificar al imputado como la persona que incurrió en el acto delictivo y ayudar a su procesamiento si reincidiere. Pero el procedimiento mismo de someter a la persona detenida a ese trámite implica una intervención con su intimidad que no debe tener más consecuencia si la persona fuere declarada inocente luego de un proceso judicial.

---

(1) Informa la petición que según surge de la prueba desfilada, el peticionario "nunca había sido acusado siquiera de delito alguno", "goza de magnífica reputación en la comunidad" y disfruta del privilegio de una licencia para portar un arma de fuego. Se desempeña hace varios años como guardián de seguridad de un edificio en condominio ubicado en una urbanización residencial de Ponce. Su esposa es sicóloga clínica en el Departamento de Instrucción Pública.

La práctica seguida hasta aquí por la Policía en estos casos, es decir, luego de que la disposición final del caso resultare en que la persona detenida no fuere convicta, ha sido incorporar la información obtenida sobre dicha persona, incluyendo sus fotografías y huellas digitales, a la que se ha dado en llamar el récord de arresto.

Esta práctica ha creado gran preocupación por el efecto adverso que la divulgación de ese récord de arresto puede tener para la persona. Véase A. Hess & F. Le Poole, *Abuse of the Record of Arrest Not Leading to Conviction*, 13 Crime and Delinq. 494 (1967); Comentario, *Retention and Dissemination*, supra, pág. 850; R. Paul Davis, *Records of Arrest and Conviction: A Comparative Study of Institutional Abuse*, 13 Creighton L. Rev. 863 (1980); Comentario, *Criminal Procedure: Expunging The Arrest Record When There Is No Conviction*, 28 Okla. L. Rev. 377 (1975).

La importancia que la divulgación del récord de arresto puede tener en cuanto se afecte a la persona detenida y no convicta es patente. Al quedar fichada[2] la persona, se le coloca entre aquellas "que se miran con prevención y desconfianza". En el aspecto económico, se minimizan sus oportunidades de empleo.[3]

En *Menard* v. *Mitchell*, 430 F.2d 486, 490–491 (1970), el Tribunal de Apelaciones para el Circuito de Columbia puntualizó otras áreas de actividad de la persona que pueden afectarse, como su reputación, sus oportunidades educativas y la obtención de licencias profesionales. Dijo dicho tribunal:

---

[2] Véase el término *fichar*, en su cuarta acepción, *Diccionario de la Real Academia Española de la Lengua*, 19na ed.

[3] Para ejemplo, un estudio realizado por la Unión de Derechos Civiles de la ciudad de Nueva York reveló que el 75% de las agencias de empleo no recomendaban a personas que tuvieran récord de arresto, no importa que no hubiesen sido convictas. A. Hess & F. Le Poole, *Abuse of the Record of Arrest Not Leading to Conviction*, 13 Crime and Delinq. 494, 495 (1967). Una similar proporción de patronos potenciales denegarían empleo bajo tales circunstancias. La magnitud del problema se dramatiza por el hecho de que se estima que un 40% de los niños varones que viven en Estados Unidos serán arrestados alguna vez en su vida por delitos que no serán meras violaciones de leyes de tránsito. Hess & Le Poole, *op. cit.*

Information denominated a record of arrest, if it becomes known, may subject an individual to serious difficulties. Even if no direct economic loss is involved, the injury to an individual's reputation may be substantial. Economic losses themselves may be both direct and serious. Opportunities for schooling, employment, or professional licenses may be restricted or nonexistent as a consequence of the mere fact of an arrest, even if followed by acquittal or complete exoneration of the charges involved. An arrest record may be used by the police in determining whether subsequently to arrest the individual concerned, or whether to exercise their discretion to bring formal charges against an individual already arrested. Arrest records have been used in deciding whether to allow a defendant to present his story without impeachment by prior convictions, and as a basis for denying release prior to trial or an appeal; or they may be considered by a judge in determining the sentence to be given a convicted offender. (Escolios omitidos.)

En la mayoría de los estados de la unión no existe legislación sobre la disposición a hacerse sobre los records de arresto. (⁴) Donde existe legislación se han tomado tres tipos de medidas, a saber: (1) ordenar la eliminación inmediata y automática del récord luego de la exoneración, (2) establecer restricciones a su divulgación, y (3) devolver al arrestado que resulta exonerado, si lo solicita, la información sobre su identificación. (⁵)

En ausencia de legislación, la jurisprudencia en los diferentes estados aparece dividida. Aquellos casos que niegan el derecho a la devolución de los records se inclinan a que ello es asunto que compete a la Rama Legislativa. (⁶)

---

(⁴) Comentario, *Criminal Procedure: Expunging the Arrest Record When There Is No Conviction*, 28 Okla. L. Rev. 377, 386 n. 80 (1975). R. Paul Davis, *Records of Arrest and Conviction: A Comparative Study of Institutional Abuse*, 13 Creighton L. Rev. 863, 873 (1980).

(⁵) Comentario, *The Expungement or Restriction of Arrest Records*, 23 Clev. St. L. Rev. 123, 127 n. 24 (1974).

(⁶) Comentario, *Criminal Procedure: Expunging the Arrest Record*, supra, pág. 384.

Otros sostienen que la no devolución de los records viola el derecho a la intimidad, aunque algunos entienden que la consideración al daño a la persona es superada por el interés del Estado en garantizar la seguridad pública mediante la prevención de crímenes y la captura de criminales.[7] En estos estados y en el ámbito federal,[8] el derecho a la intimidad no tiene la fuerza que en Puerto Rico bajo nuestra Constitución. Así lo reconoció el distinguido Juez Cancio, del Tribunal de Distrito de los Estados Unidos para Puerto Rico, al expresar lo siguiente en *United States* v. *Kalish,* 271 F. Supp. 968, 970 (1967):

> There can be no denying of the efficacy of fingerprint information, photographs, and other means of identification in the apprehension of criminals and fugitives. Law enforcement agencies must utilize all scientific data in society's never-ending battle against lawlessness and crime. When arrested, an accused does not have a constitutional right of privacy that outweighs the necessity of protecting society and the accumulation of his data, no matter how mistaken the arrest may have been.
>
> However, when an accused is acquitted of the crime or when he is discharged without conviction, no public good is accomplished by the retention of criminal identification records. On the other hand, a great imposition is placed upon the citizen. His privacy and personal dignity is invaded as long as the Justice Department retains "criminal" identification records, "criminal" arrest, fingerprints and a rogue's gallery photograph.

Nuestra Constitución dispone en su Art. II, Sec. 8, lo siguiente:

> Toda persona tiene derecho a protección de ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar.

---

[7] *Kolb* v. *O'Connor,* 14 Ill. App.2d 81, 142 N.E.2d 818 (1957); *People* v. *Lewerenz,* 42 Ill. App.2d 410, 192 N.E.2d 401 (1963).

[8] Compárese, *Paul* v. *Davis,* 424 U.S. 693 (1976).

Dijimos en *Figueroa Ferrer* v. *E.L.A.*, 107 D.P.R. 250, 258–259 (1978):

En *E.L.A.* v. *Hermandad de Empleados*, 104 D.P.R. 436, 439–440 (1975), apuntamos que el derecho a la intimidad tiene un historial distinto en Puerto Rico al que tiene en Estados Unidos. Añadimos que nuestro Art. II, Sec. 8 es una copia literal del Art. V de la Declaración Americana de los Derechos y Deberes del Hombre y que entronca también con el Art. 12 de la Declaración Universal de los Derechos del Hombre. Recalcamos que nuestra Asamblea Constituyente quiso "formular una Carta de Derechos de factura más ancha que la tradicional, que recogiese el sentir común de culturas diversas sobre nuevas categorías de derechos".

En *Cortés Portalatín* v. *Hau Colón*, 103 D.P.R. 734, 738 (1975), nos habíamos referido también a la amplitud del derecho a la intimidad. "Representando así esta sección [la número 8 del Art. II], como varias otras", afirmamos, "un principio con aspiraciones de universalidad, destilado de muy diversos sistemas jurídicos, ancho es el mundo que se nos brinda para su interpretación justa. No se está obligado por juegos específicos de reglas históricas. La obligación es acatar el mandato constitucional, en consonancia con otras disposiciones de nuestra ley primaria y las realidades del país".

La importancia de este derecho a la intimidad, que es consubstancial a la declaración de inviolabilidad de la dignidad del ser humano consagrada como principio rector de nuestra vida de pueblo civilizado y democrático, ya apuntaba en expresiones del prócer don Román Baldorioty de Castro, al señalar la obligación de los tribunales de justicia de hacerla respetar como parte de los derechos "ilegislables" de toda persona. Decía Baldorioty:

. . . La petición ante los poderes públicos para el restablecimiento del derecho hollado o de la justicia olvidada, no solamente es una necesidad individual y colectiva, sino también el reconocimiento, la consagración popular de aquellos mismos poderes. La libertad personal y la seguridad del hogar doméstico, son garantías que, como todos los derechos individuales, no puede ni renunciar ni delegar ningún pueblo libre. Los llamamos *ilegislables*, porque no cabe poner estos derechos a

merced de ningún partido político, dominante en las esferas legislativas; por el contrario, los tribunales de justicia deben estar investidos del poder de revocar, o dejar sin efecto toda ley atentatoria a los derechos del hombre. Cualquiera ficción, cualquiera mayoría que pretenda regularlos atenuándolos, limitándolos o desvirtuándolos, marcha consciente o inconscientemente en la senda de la tiranía.[9]

La retención por la Policía de las fotografías y huellas dactilares tomadas a una persona que es luego exonerada de delito, aparte de constituir, por su posible divulgación, un factor que afecta a la persona en múltiples aspectos de su vida económica y en sus oportunidades educativas y de empleo,[10] podría constituir, mientras no se le devuelvan, una invasión de su derecho a la intimidad. La arbitraria retención de dicha información deja de tener significación cuando la persona es exonerada de delito, a menos que se la quiera mantener para señalarle en el futuro como posible autor de otros o parecidos delitos. El argumento se cae por su peso. El Procurador General no nos ha demostrado que haya un interés apremiante del Estado superior al derecho de la persona a que se respete y se proteja su intimidad. El arresto de una persona no tiene ni puede tener el alcance de señalarle con el estigma de que es un delincuente, y no puede ni debe tener efecto alguno sobre dicha persona una vez se le exonera en un proceso judicial.[11] "No podrá disminuirse el valor y consecuencia de la sentencia absolutoria . . . ." *Carlo v. Srio. de Justicia*, 107 D.P.R. 356, 363–364 (1978).

---

[9] Tomado del discurso de don Jorge Font Saldaña ante la Asamblea Constituyente, 1 Diario de Sesiones de la Convención Constituyente 389 (1951).

[10] Aunque esta divulgación ocurra con la autorización del solicitante de empleo esto no cura el daño que se le hace, ya que éste no tiene otra alternativa que dar la autorización si quiere ser considerado para el empleo.

[11] En *Schware v. Board of Bar Examiners*, 353 U.S. 232, 241 (1957), expresó el Tribunal Supremo federal:

"The mere fact that a man has been arrested has very little, if any, probative value in showing that he has engaged in any misconduct. An arrest shows nothing more than that someone probably suspected the person apprehended of an offense."

■ Al dictarse la resolución aquí recurrida no existía en Puerto Rico legislación alguna que autorizase la toma de huellas digitales y fotografías a personas imputadas de delito, ni que reglamentase lo concerniente a su devolución si dicha persona resultare absuelta. Estando pendiente este recurso se aprobó la Ley Núm. 45 de 1 de junio de 1983, que autoriza a la Policía a tomar huellas digitales y fotografías a personas a quienes se impute la comisión de *delitos graves* y permite su devolución al imputado que resulte absuelto. Su Art. 4 dispone:

> Artículo 4.—
> Cualquier persona a la que se le impute la comisión de un delito grave que resulte absuelta luego del juicio correspondiente, o por orden o resolución del tribunal, podrá solicitar al tribunal, la devolución de las huellas digitales o fotografías. El tribunal, notificará al fiscal y de éste no haber presentado objeción dentro del término de diez días, podrá ordenar, sin vista, la devolución de las mismas. De haber objeción del fiscal se celebrará una vista a esos efectos.

■ La medida parece dejar a la discreción del tribunal la decisión sobre devolver al imputado absuelto las huellas digitales y fotografías tomadas. Ante el reconocimiento constitucional de la inviolabilidad de la dignidad del ser humano y del derecho a la protección de su intimidad —Art. II, Secs. 1 y 8 de la Constitución— tal discreción no puede ejercerse livianamente. Podrá denegarse la solicitud sólo cuando se justifique cumplidamente ante el tribunal mediante prueba convincente, que existen circunstancias especiales que ameriten que la Policía conserve, en cuanto a la persona afectada, las huellas digitales y fotografías que le hubieren sido tomadas.([12]) En ese caso dicha información

---

([12]) En el caso de autos el tribunal de instancia denegó la devolución porque entendió que el peticionario cometió el delito que se le imputó y del cual fue absuelto por el jurado. No podemos aceptar tal razonamiento. La absolución decretada por el jurado cierra el proceso criminal en nuestro sistema de impartir justicia. Se frustraría el propósito de hacer justicia si se permitiera que las personalísimas impresiones del juez pudieran utilizarse para minimizar el efecto favo-

deberá mantenerse en los archivos de la Policía como confidencial, para uso exclusivo de la Policía, y no deberá divulgarse como parte del récord de arresto o certificados de conducta de dicha persona.

*Se expedirá el auto de certiorari solicitado y se dictará sentencia que revoque la resolución recurrida y disponga que por el Tribunal Superior, Sala de Ponce, se ordene la devolución al aquí peticionario de todas las fotografías y huellas digitales que le hubieren sido tomadas por la Policía de Puerto Rico.*

El Juez Asociado Señor Torres Rigual concurre en el resultado sin opinión y el Juez Asociado Señor Rebollo López no intervino.

---

rable para el acusado de un veredicto absolutorio. Véase *Carlo* v. *Srio. de Justicia,* 107 D.P.R. 356 (1978).