ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| RAMÓN LUIS SANTIAGO CORA<br><br>Peticionario<br><br>v.<br><br>EX PARTE | KLCE202301002 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Guayama<br><br>Caso Número: GM2023CV00179<br><br>Sobre:<br><br>Petición de orden-eliminación de antecedentes penales |
|---|---|---|

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores

Rivera Marchand, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 13 de diciembre de 2023.

Comparece Ramón Luis Santiago Cora (Sr. Santiago Cora o peticionario) y nos solicita que revoquemos la *Resolución*[1] del Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario), emitida y notificada el 20 y 21 de agosto de 2023, respectivamente. Tras haber ordenado la eliminación de la convicción por agresión agravada del expediente de antecedentes penales del peticionario[2], el foro primario denegó una solicitud del peticionario para ordenar al Superintendente de la Policía devolver al Sr. Santiago Cora sus fotografías y huellas dactilares después de más de veinte años de haber cumplido su sentencia.

Por los fundamentos que exponemos a continuación, expedimos el auto de *certiorari* y revocamos la *Resolución* impugnada. Veamos.

### I.

---

[1] Apéndice, págs. 14 y 14-A.
[2] Véase, *Resolución* emitida y notificada el 11 y 12 de mayo de 2023, respectivamente. Apéndice, págs. 10 y 10-A.

Número Identificador:

SEN2023_____

El 9 de febrero de 2023, el Sr. Santiago Cora instó ante el foro primario una *Petición*[3] al amparo del Artículo 4 de la Ley Núm. 314-2004, según enmendada, Ley para autorizar a la Policía de Puerto Rico la expedición de certificados de antecedentes penales, (Ley 314-2004), 34 LPRA sec. 1725a-2. Expresó en su petitorio que, el 15 de junio de 1998, cumplió la sentencia que se le impuso de pagar $100.00 de multa por violar el Artículo 95 del Código Penal de Puerto Rico de 1974 (agresión agravada). Añadió que, conforme lo requiere el Artículo 4, de la Ley 314-2004, *supra*, han transcurrido más de cinco (5) años desde que cumplió su sentencia, sin cometer delito alguno. Por último, expuso que goza de buena reputación moral en la comunidad, lo cual acreditó mediante las declaraciones juradas de Justiniano Rodríguez Aloyo y María Cintrón Caballero.[4] Sobre tales bases, el Sr. Santiago Cora solicitó al Estado que elimine la referida convicción de su récord penal y que le devuelva la foto y huella dactilar que obra en el expediente del Estado.

En atención a lo anterior, el TPI celebró la vista de rigor en la cual el peticionario sustentó los hechos con prueba. Con el aval del Estado, el foro primario declaró con lugar la solicitud del Sr. Santiago Cora. Por consiguiente, ordenó al Superintendente de la Policía y al Departamento de Justicia eliminar el delito de agresión agravada del récord de antecedentes penales.[5]

Surge del expediente que, al personarse el Sr. Santiago Cora a las oficinas de la Policía de Puerto Rico con el certificado expedido a su favor, se le negó la devolución de las fotografías y huellas dactilares, bajo el fundamento de que, la *Resolución* del TPI no lo autoriza. En reacción, el peticionario instó una *Moción para que se*

---

[3] Junto a su petitorio, el Sr. Santiago Cora anejó su declaración jurada, Copia de su récord según antecedentes penales, Certificación de Servicios Legales, *Sentencia* cumplida y dos declaraciones juradas de miembros de su comunidad. Apéndice, págs. 1-9.

[4] Apéndice, págs. 8-9.

[5] Apéndice, págs. 10 y 10-A.

*enmiende Resolución emitida.*[6] En ella, solicitó al foro primario que modifique su dictamen a los fines de ordenar la devolución de las fotografías y huellas dactilares.

En respuesta, el TPI emitió una *Resolución*[7] ordenando al Ministerio Público, en representación del Estado, exponer su posición. Al cabo de más de dos meses sin que el Estado compareciera, el Sr. Santiago Cora presentó una *Moción Urgente.*[8] Allí, reiteró su solicitud de enmienda e hizo constar que no ha mediado oposición del Estado. Además, sustentó la urgencia de su petitorio en que está a la espera de obtener un trabajo. Sin el Estado haber dado cumplimiento a lo ordenado por el TPI, el foro recurrido emitió la *Resolución* impugnada mediante la cual denegó el petitorio del Sr. Santiago Cora. A esos efectos hizo constar "[l]a ley provee un procedimiento para la eliminación de convicciones del Certificado de Antecedentes Penales, nada se establece sobre la entrega de fotografías y huellas dactilares [...]"[9]

Inconforme aún, el peticionario acude en revisión ante esta Curia y señala la comisión de dos errores, a saber:

> Incidió el TPI al negarse a eliminar o entregar al peticionario las fotografías y huellas dactilares producto del proceso penal, a pesar de ser de beneficio para éste y que el Estado no adujo fundamento alguno para oponerse a lo solicitado.

> Incurrió en error el TPI en el uso de su discreción y descartar sin análisis alguno las opiniones emitidas por el Tribunal Supremo de Puerto [Rico], obviando los hechos particulares del presente caso.

En cumplimiento con nuestro requerimiento, el Estado comparece y argumenta que no procede devolver al peticionario las fotografías y huellas dactilares en tanto y en cuanto, la Ley 314-2004, *supra,* nada provee al respecto. A lo antes añade que, el Sr. Santiago Cora no cualifica para el remedio que provee la Ley Núm.

---

[6] Apéndice, pág. 11.
[7] Apéndice, pág. 12.
[8] Apéndice, pág. 13.
[9] Apéndice, pág. 14.

45 de 1 de junio de 1983, *Ley de huellas digitales y fotografías por delito grave* (Ley 45-1983), 25 LPRA sec. 1154.

Con el beneficio de las posturas de ambas partes, resolvemos.

**II.**

**A. *Certiorari***

El recurso de *certiorari* es un auto procesal extraordinario por el cual un peticionario solicita a un tribunal de mayor jerarquía que revise y corrija las determinaciones de un tribunal inferior. *Rivera Gómez y otros v. Arcos Dorados Puerto Rico, Inc. y otros*, 2023 TSPR 65, resuelto el 8 de mayo de 2023; *Torres González v. Zaragoza Meléndez*, 2023 TSPR 46, resuelto el 12 de abril de 2023. Es norma reiterada que, una resolución u orden interlocutoria, contrario a una sentencia, es revisable ante el Tribunal de Apelaciones mediante auto de *certiorari. Rivera Gómez y otros v. Arcos Dorados Puerto Rico, Inc. y otros*, supra. A diferencia del recurso de apelación, el tribunal revisor tiene la facultad de expedir el auto de *certiorari* de manera discrecional. *Torres González v. Zaragoza Meléndez,* supra.

Por su parte, la Regla 52.1 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, limita la facultad que tiene el foro apelativo intermedio para revisar las resoluciones u órdenes interlocutorias que emite el foro primario. *Caribbean Orthopedics v. Medshape, et al.*, 207 DPR 994 (2021). Esa regla establece que el recurso de *certiorari* solo se expedirá cuando se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo. *Torres González v. Zaragoza Meléndez,* supra.

No obstante, la citada la Regla 52.1, también dispone que el tribunal apelativo, en su ejercicio discrecional y por excepción, podrá expedir un recurso de *certiorari* cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, en asuntos relacionados a privilegios evidenciarios, en

casos de anotaciones de rebeldía, en casos de relaciones de familia, en casos revestidos de interés público o en cualquier otra situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia. *Íd.* El delimitar la revisión a instancias específicas tiene como propósito evitar las "dilaciones innecesarias, el fraccionamiento de causas y las intervenciones a destiempo." *Íd.*; Véase, además, *Scotiabank v. ZAF Corp., et al.*, 202 DPR 478, 486-487 (2019).

Por otro lado, el examen que hace este Tribunal previo a expedir un auto de *certiorari* no se da en el vacío ni en ausencia de otros parámetros. *Torres González v. Zaragoza Meléndez,* supra. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, señala los criterios que debemos tomar en consideración al evaluar si procede expedir el auto de *certiorari.* La citada Regla dispone:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El foro apelativo debe ejercer su facultad revisora solamente en aquellos casos en que se demuestre que el dictamen emitido por

el foro de instancia es arbitrario o constituye un exceso de discreción. *Pueblo v. Rivera Montalvo*, 205 DPR 352 (2020).

**B. Eliminación de antecedentes penales y el Derecho a la Intimidad**

Durante más de cuatro décadas, la Asamblea Legislativa ha aprobado legislación dirigida a facilitar la reintegración de los confinados en la sociedad, una vez cumplan su sentencia. Uno de estos estatutos que viabiliza lo antes, versa sobre la eliminación de convicciones. El objetivo principal de esta legislación original (que permea en sus enmiendas posteriores) era ayudar y servir como un estímulo para la rehabilitación de personas que han incurrido en alguna falta y que luego mantienen una buena conducta en la comunidad. En su origen, la Ley Núm. 108 de 21 de junio de 1968, (inspirado en la exposición de motivos de leyes anteriores),[10] según ampliamente discutido en *Pueblo v. Ortiz Martínez* 123 DPR 820, 829, (1989), establece que, la razón principal que animó la aprobación del estatuto sobre eliminación de antecedentes penales, fue el reconocimiento legislativo de que, el ser humano muchas veces supera aquellas actuaciones y conductas ilegales del pasado, y que compete al Estado proveer los mecanismos necesarios para una total rehabilitación. Su efecto principal es borrar las consecuencias jurídicas y socioeconómicas que en nuestra sociedad representa la existencia permanente de un récord penal. Se trata de una acción de carácter remedial encaminada a proteger y a hacer valer, de manera más efectiva, los derechos civiles de un ciudadano.[11] Como parte de tales esfuerzos, la Asamblea Legislativa enmendó el estatuto mediante la Ley 254 de 27 de julio de 1974 (Certificaciones de Antecedentes Penales o Ley 254-1974) y luego mediante la aprobación de la Ley 314-2004, *supra*. En lo pertinente

---

[10] Véase, *Pueblo v. Ortiz Martínez* 123 DPR 820, 828-830, citando al P. del S. 169 de 14 de marzo de 1957, P. de la C. 14 de 1962 y P. de la C. 144, respectivamente.
[11] *Íd.,* a la pág. 830.

al recurso ante nos, el referido estatuto[12], viabiliza la eliminación de una convicción por delito grave, una vez se cumplan las siguientes circunstancias:

> [t]oda persona que haya sido convicta de un delito grave que no esté sujeta al Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso Contra Menores ni al Registro de Personas Convictas por Corrupción, podrá solicitar del Tribunal de Primera Instancia una orden para la eliminación de la convicción del Certificado de Antecedentes Penales, siempre que concurran las siguientes circunstancias: (a) que hayan transcurrido cinco (5) años desde que cumplió la sentencia y durante ese tiempo no haya cometido delito alguno; (b) que tenga buena reputación en la comunidad; y (c) que se haya sometido a la muestra requerida por la Ley del Banco de Datos de ADN, de estar sujeta a ello. El peticionario acompañará los documentos necesarios para probar las alegaciones de su petición. El Ministerio Público podrá oponerse o allanarse a la petición, en cuyo caso no será necesario celebrar vista.

El Tribunal Supremo ha establecido que, a partir de este referido mandato, las convicciones serán eliminadas de todo registro y de toda inscripción, constancia o referencia que exista bajo la custodia de los funcionarios, quedando prohibido aludirlas o certificarlas directa o indirectamente. *Pueblo v. Ortiz Martínez*, supra, pág. 831. De ese modo, logra plena virtualidad la filosofía consagrada en la ley –congruente con un enfoque moderno de rehabilitación- de que el peticionario nunca fue acusado ni convicto de delito. Ciertamente, tanto el procedimiento judicial como el trámite administrativo, establecidos en la ley, vienen a llenar una laguna y a remediar una situación de injusticia que pesaba sobre aquellos ciudadanos que años atrás incurrieron en delito, pero que después han mantenido una conducta ejemplar en nuestra sociedad. En *Pueblo v. Ortiz Martínez,* supra, págs. 831-832, al abundar sobre las consecuencias de tal postulado, el Tribunal Supremo resaltó que, ante la eliminación de una convicción borrada, los tribunales no pueden tomarlas en consideración porque <u>no puede darse la anomalía de que mientras de un lado el</u>

---

[12] 34 LPRA 1725a-2.

Superintendente de la Policía certifica negativamente, por otro lado, el tribunal acuda a sus archivos para resucitar convicciones.

De otra parte, la Ley 45-1983, *supra,* viabiliza en su Artículo 4 la devolución de documentos como huellas digitales y fotografías. A esos efectos dispone lo siguiente:

> Cualquier persona a la que se le impute la comisión de su delito grave o menos grave producto de una misma transacción o evento que resulte absuelta luego del juicio correspondiente, o por orden o resolución del Tribunal o toda persona que reciba un indulto total y absoluto del Gobernador, podrá solicitar al Tribunal, la devolución de las huellas digitales y fotografías. El peticionario notificará al Ministerio Publico y de este no presentar objeción dentro del término de diez días, el Tribunal podrá ordenar, sin vista, la devolución solicitada. De haber objeción del Ministerio Publico, el Tribunal señalará vista pública a esos efectos. 25 LPRA sec. 1154.

De conformidad con lo anterior, en *Pueblo v. Torres Albertorio,* 115 DPR 128 (1984), reiterado en *Pueblo v. Ortiz Martínez,* supra, el Tribunal Supremo reconoció que, la toma de fotografías y huellas dactilares a las personas detenidas para responder por delito público constituye una práctica aceptable como parte de la labor investigativa de la Policía. Lo antes tiene un doble propósito de identificar al imputado como la persona que incurrió en el acto delictivo y ayudar a su procesamiento si reincidiere. Ahora bien, el Alto Foro puntualizó que, el procedimiento mismo de someter a la persona detenida a ese trámite implica una intervención con su intimidad que no debe tener más consecuencia si la persona fuere declarada inocente luego de un proceso judicial. En este caso el Tribunal Supremo alertó que la práctica de la Policía de retener huellas y fotografías en el récord criminal tiene un efecto adverso. Citando a *Menard v. Mitchell* 430 F 2d. 486, 490-491 (1970) puntualizó que, otras áreas de actividad de la persona pueden afectarse, como su reputación, sus oportunidades educativas y la obtención de licencias profesionales. Al abundar sobre si es un asunto que atañe a la legislatura o de interpretación judicial, el Alto

Foro destacó que <u>el derecho a la intimidad goza de mayor fuerza toda vez que en Puerto Rico emana de nuestra Constitución</u>.

Por su primacía, este derecho está consagrado, en el Artículo II, Sec. 1 de la Constitución, el cual establece que: La dignidad del ser humano es inviolable; y en su Sec. 8 establece que: Toda persona tiene derecho a [la] protección de [la] ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar. Sobre lo anterior, el Alto Foro expresó en *P.R. Tel. Co. Martínez,* 114 DPR 328 (1983) que, tan transcendental es este derecho en nuestra sociedad que, en las ocasiones en que se ha contrapuesto a otros de similar jerarquía, ha salido airoso del careo constitucional. Incuestionablemente goza de primacía en la pirámide constitucional. Ese sitial nos permite contestar una de las interrogantes formuladas: su implementación no requiere legislación específica. Supeditarlo a la acción legislativa sería simplemente incongruente con el propósito de los forjadores de la Constitución y representaría una contramarcha en su evolución vindicadora. Lo reduciríamos a una escala nominal. *Íd.* a las págs. 338-340.

La importancia de este derecho a la intimidad, que es consubstancial a la declaración de inviolabilidad de la dignidad del ser humano, está consagrada como principio rector de nuestra vida de pueblo civilizado y democrático. *Pueblo v. Torres Albertorio*, supra a la pág. 134. Allí el Alto Foro también expuso que, y atinente la presente causa, la arbitraria retención de dicha información deja de tener significación cuando la persona es exonerada de delito, <u>a menos que se la quiera mantener para señalarle en el futuro como posible autor de otros o parecidos delitos</u>. Le corresponde al ministerio público demostrar en este tipo de caso, que haya un interés apremiante del Estado, superior al derecho de la persona, a

que se respete y se proteja su intimidad. *Fulana de Tal v. Demandado A,* 138 DPR 610, 629-630 (1995).

Al abordar el alcance de la Ley 45-1983, *supra*, el Tribunal Supremo en *Pueblo v. Torres Albertorio*, supra, concluyó que, la medida parece dejar a la discreción del tribunal la decisión sobre devolver al imputado absuelto las huellas digitales y fotografías tomadas. Ante el reconocimiento constitucional de la inviolabilidad de la dignidad del ser humano y del derecho de su intimidad, tal discreción no puede ejercerse livianamente. *Íd.* a la pág. 136. Cabe señalar que, si a una persona absuelta de delito solo podrá negársele la devolución de sus huellas dactilares y fotografías, si el Estado logra presentar prueba convincente de que circunstancias especiales justifican su retención. En cuyo caso, la Policía de Puerto Rico deberá mantener dicha información de manera confidencial, sin divulgar a terceros. En dicho caso, el Tribunal Supremo dispuso además que, la toma de fotografías y huellas dactilares se realiza con el objetivo de identificar al imputado como la persona responsable del acto delictivo y <u>facilitar su procesamiento en caso de reincidencia</u>. *Pueblo v. Torres Albertorio*, supra a la págs. 130 y 136.

Previo a la aprobación de la Ley 45-1983 y de la Ley 314-2004, el Tribunal Supremo resolvió *Archevali v. E.L.A.,* 110 DPR 767, 771 (1981). En dicho caso, la Sra. Archevali resultó convicta por expedir cheques sin fondo. Allí, nuestro más Alto Foro, de forma *Per Curiam,* resolvió que, no procede la devolución de las fotografías, huellas digitales y del expediente investigativo debido a que la Sra. Archevali fue declarada culpable. Lo antes, <u>en la eventualidad de que ella reincida en otros delitos.</u>

### C. Reincidencia

El Artículo 74 del Código Penal de Puerto Rico de 2012, 33 LPRA sec. 5107, desglosa las normas aplicables a la determinación

de reincidencia. En lo atinente al caso de epígrafe, el inciso (a) dispone lo siguiente:

(a) No se tomará en consideración un delito anterior **si entre éste y el siguiente han mediado diez (10) años** desde que la persona terminó de cumplir sentencia por dicho delito. (Énfasis nuestro.)

(b) [...]

Añádase que, el Tribunal Supremo en *Pueblo v. Galindo González* 129 DPR 627 (1991), al analizar el valor probatorio de una convicción anterior para impugnar la credibilidad en un caso sobre reincidencia, determinó que la convicción anterior que tenga más de diez (10) años, se considera remota y debe ser excluida automáticamente de la prueba a considerarse, porque mientras más remota menos será su valor probatorio. *Íd.* a la pág. 641, citando la Regla 46 (c) de Evidencia 32 LPRA Ap. IV; E.L. Chiesa, Evidencias de carácter y conducta específica bajo las Reglas de Evidencia de 979, XV (Núm.2) Rev. Jur. U.I.A 76 (1980).

### D. Hermenéutica

La hermenéutica legal es el proceso de interpretar las leyes; es decir, auscultar, averiguar, precisar y determinar cuál ha sido la voluntad legislativa. Este método de interpretación se utiliza, no solamente en la interpretación de estatutos, sino también, en la de los contratos, testamentos, reglamentos administrativos y cualquier otro documento. R. E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. JTS, 1987, Vol. I, pág. 241. Véase, además, *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 717, 738 (2012).

Los tribunales tienen la facultad de interpretar las leyes cuando no son claras o concluyentes sobre un punto particular; cuando es necesario suplir una laguna en el estatuto, o cuando la

justicia lo requiera para mitigar los efectos adversos de la aplicación de una ley. *Brau, Linares v. ELA et als.*, 190 DPR 315, 340 (2014). El juzgador, al sumergirse en esta tarea, debe cerciorarse de que se descubra y se haga cumplir la verdadera intención y el deseo del poder legislativo. *Puerto Rico Fast Ferries, LLC v. Autoridad de Alianzas Público-Privadas y otros,* 2023 TSPR 121, resuelto el 3 de octubre de 2023.[13] Así, pues, la aplicación justa de la norma legal requiere del juez gran ponderación, profunda sabiduría y vuelo imaginativo. Para ello, es deber del juez escrutar las palabras de la ley para encontrar el propósito que se propone. Además, el juez debe hurgar la prueba para descubrir elementos que se niegan a salir a flote y que demuestren lo acontecido realmente y escudriñar las controversias hasta comprender su verdadero origen. Es importante que lo que se produzca sea "una solución que sea cónsona con la idea animadora del derecho, que es la justicia". R. E. Bernier y J.A. Cuevas Segarra, *op. cit.*, pág. 288.

Nuestro más Alto Foro ha expresado que el Código Civil de Puerto Rico "contiene una serie de disposiciones dirigidas a guiar el análisis e interpretación correcta de las leyes". *IFCO Recycling v. Aut. Desp. Sólidos*, supra. Una de las reglas de hermenéutica legal que surgen de dicho código es: "[c]uando la ley es clara y libre de toda ambigüedad, su texto no debe menospreciarse bajo el pretexto de cumplir su espíritu". Art. 19 del Código Civil de 2020, Ley Núm. 55-2020, 31 LPRA sec. 5341. *Véase*, además, *Romero, Valentín v. Cruz, CEE et al.*, 205 DPR 972, 992 (2020).

### III.

En su recurso, el peticionario impugna la denegatoria del foro primario a su solicitud de devolución de fotografías y huellas

---

[13] Véase, además, *IFCO Recycling v. Aut. Desp. Sólidos*, *supra*, citando a R. E. Bernier y J.A. Cuevas Segarra, *op. cit.*, pág. 242.

dactilares. En su discusión, el peticionario expresa que el Estado no tiene ninguna utilidad para retener tales documentos. Reconoce que, distinto a los hechos de *Pueblo v. Torres Albertorio*, supra, él fue encontrado culpable y pagó la multa impuesta. Ahora bien, entiende que, si el Estado retiene sus fotografías y huellas dactilares, constituye una violación a su derecho a la intimidad. Ello, en consideración al tiempo transcurrido -25 años- desde que cumplió su sentencia, sin haber cometido un delito ulterior y gozando de buena reputación en la comunidad.

El peticionario advierte que, si bien es cierto que en *Archevali v. E.L.A.,* supra, el Tribunal Supremo no autorizó la devolución de las fotografías y huellas digitales a la Sra. Archevali -tras ser hallada culpable-, también es cierto que, a la fecha de su solicitud, a ella no se le había autorizado la eliminación de la convicción de su expediente penal.

En apoyo a su análisis, el peticionario cita lo resuelto por el Tribunal de Apelaciones en *Ex parte Sánchez Torres* (KLCE201000425)[14]. Allí, un panel hermano dictaminó que, ante la imposibilidad de aplicar la reincidencia por el tiempo transcurrido desde que cumplió la sentencia impuesta, en consideración al derecho constitucional a la intimidad que cobija al Sr. Sánchez Torres y en ausencia de una justificación del Estado para retener lo solicitado, procedía la devolución de las huellas digitales al Sr. Sánchez Torres.[15] Al analizar el alcance de la Ley 45-1983, el panel hermano puntualizó que "[…]dicha pieza legislativa no excluye otros posibles escenarios sino que delimita el ámbito en esos dos supuestos [absolución e indulto]. Caso a caso, a la luz de la totalidad de las circunstancias y la interacción de derechos constitucionales

---

[14] Citado por las partes en sus alegatos como *In re-Sánchez Torres*.
[15] De nuestra búsqueda en el Registro de Transacciones para Tribunales (TRIB) no surge que el referido dictamen haya sido objeto de revisión judicial ante el Tribunal Supremo.

y estatutarios, los tribunales tienen discreción para evaluar este tipo de solicitud."

Por su parte, el Estado argumenta que, la ley de certificaciones de antecedentes penales, *supra,* nada provee con respecto a la devolución de huellas y fotografías. Expresa además que, la Ley 45-1983, *supra,* limita el beneficio de solicitar la devolución de las huellas dactilares y fotografías a aquellas personas que resultaron absueltas de delito o que recibieron el indulto total o absoluto del Gobernador. Con respecto a lo resuelto en *Ex parte Sánchez Torres* (KLCE201000425), el Estado arguyó que el panel hermano obvió el texto claro de la Ley 45-1983, *supra,* el cual limita la devolución de las fotografías y huellas dactilares en poder de la Policía de Puerto Rico a las personas que resultaron absueltas o que recibieron un indulto del Gobernador. Sostuvo que, contrario a lo anterior, otro panel hermano en *Ex Parte López Fantauzzi,* (KLCE201501202) concluyó que, la retención de tales documentos en los archivos de la Policía no afecta los intereses o derechos de las personas y resulta ser un instrumento investigativo indispensable. Lo antes, en la medida en que, no existe un riesgo de que esta información sea divulgada a terceros, afectando así sus oportunidades educativas, laborales o su vida económica. Precisó que, el panel hermano determinó que esa información es útil para el Estado en caso de que reincida en otros delitos.

Añade que, el peticionario no ha demostrado que la retención de tales documentos por parte de la Policía de Puerto Rico vulnere su derecho a la intimidad. A su vez aduce que, la referida retención no afecta los intereses y derechos del peticionario toda vez que dicha información será custodiada por la Policía de Puerto Rico de manera confidencial. Además, sostiene que, las huellas dactilares y las fotografías constituyen instrumentos investigativos indispensables y forman parte de la base de datos de la Policía de Puerto Rico. Bajo

estas circunstancias, el Estado indica que no cabe hablar de una violación al derecho a la intimidad, ni de que la resolución recurrida sea irrazonable, ni tampoco de que las fotos y huellas dactilares del peticionario queden "gravitando en una oficina".[16] Expuso a la luz de la jurisprudencia aplicable que, en caso de que la persona resulte convicta no procede la devolución de las fotografías, ni de las huellas digitales porque esa información es útil para el Estado como parte de sus poderes investigativos y en caso de que la persona reincida en otros delitos.

A nuestro entender, la cuestión planteada no es tan simple. No albergamos duda de que el poder investigativo es fundamental en la protección de nuestra sociedad. Sin embargo, resulta evidente que, nuestro ordenamiento jurídico obliga a que se identifique de forma convincente una justificación constitucional para perpetuar de forma indefinida la retención única de huellas y fotografías de personas sin antecedentes penales.

Hemos evaluado las posturas de las partes, el derecho, así como la jurisprudencia aplicable y colegimos que, para atender propiamente el asunto ante nos, es preciso efectuar un escrutinio de factores a la luz de la ley sobre eliminación de antecedentes penales, el poder del Estado para imputar reincidencia y el derecho a la intimidad.

En primer lugar, la ley de eliminación de antecedentes penales tiene un propósito incuestionable de estimular la rehabilitación de una persona. A esos efectos, transcurrido determinado periodo y cumplida la sentencia impuesta, la persona pueda lograr por determinación judicial que se borre la existencia de sus previas convicciones al emitir una certificación a esos efectos. Sin embargo, el Estado delimita la efectividad de dicha certificación sobre

---

[16] Véase, *Escrito en Cumplimiento de Orden*, págs. 10-11.

eliminación al retener las fotografías y huellas dactilares por tiempo indefinido. Lo antes, con el propósito de tener una base de datos para sostener sus poderes investigativos ante la eventualidad de imputar reincidencia. No obstante, observamos una incongruencia entre los estatutos aplicables ante el escenario cuando esos documentos (huellas y fotografías) no son útiles para imputar la reincidencia. Es decir, al transcurrir el término que establece el Art. 74 (a) del Código Penal, *supra*, ya el Estado no tendría autoridad para imputar reincidencia.

Ciertamente no albergamos duda de que, durante el periodo que se permite imputar la reincidencia, el Estado goza de un interés apremiante de conservar tales fotografías y huellas dactilares. Ahora bien, una vez vence el término para imputar reincidencia y emitida la certificación que demuestra que no tiene antecedentes penales, ¿la persona recobra su expectativa de intimidad? ¿Y al caducar el término para imputar reincidencia es irrazonable el interés apremiante del Estado sobre esa persona? Nos preguntamos si, la conservación de fotos y huellas de forma perpetua en determinadas circunstancias transgrede los parámetros de razonabilidad violentando así el derecho a la intimidad.

De un examen cuidadoso del Artículo 4 de la Ley 45-1983, *supra,* se desprende que, el legislador autorizó expresamente la devolución de las fotografías y huellas dactilares a personas que fueron indultadas o que resultaron absueltas de delito. A su vez, observamos que, dicho estatuto no excluye cualquier otro escenario. Añádase a ello que, no se debe propiciar determinaciones que resulten en conflicto con la intención legislativa que ha prevalecido durante los pasados cuarenta años, de aprobar medidas que faciliten la reincorporación en nuestra sociedad de quienes previamente infringieron la ley y los estimulen a no volver a delinquir.

Para sustentar lo anterior, debemos señalar que, en *Pueblo v. Torres Albertorio*, supra, el Tribunal Supremo reconoció que, si la Policía retiene las fotografías y huellas dactilares de una persona que fue exonerada de delito, puede afectar su vida económica, educativa y laboral, e incluso, puede invadir su derecho a la intimidad, mientras no le sean devueltas. Sobre el particular abundó, "[l]a arbitraria retención de dicha información deja de tener significación cuando la persona es exonerada de delito, a menos que se la quiera mantener para señalarle en el futuro como posible autor de otros o parecidos delitos." *Pueblo v. Torres Albertorio*, supra, pág. 135. A esos efectos, el Tribunal Supremo añadió que, una solicitud de devolución de huellas dactilares y fotografías podrá denegarse si el Estado justifica, mediante prueba convincente, que existen circunstancias especiales que ameritan su retención. *Íd.*, págs. 136-137.

Reconocemos que en el caso que nos ocupa se presenta una situación de hechos distinguible, toda vez, que aquí el peticionario por un lado tiene a su haber un certificado que divulga que no tiene antecedentes penales. Por otro lado, ha transcurrido mayor término que se permite para imputarle reincidencia. Además, el Estado no ha presentado circunstancias especiales que ameriten su retención después de 25 años, lo cual atenta contra el derecho a la intimidad.

Al abordar la forma de adjudicar una controversia de esta índole, hay que someterla a un análisis de escrutinio estricto, a los fines de decidir si debe prevalecer el interés del Estado de proteger la seguridad pública *vis a vis* el derecho a la intimidad del peticionario. En atención a ese balance que debemos alcanzar reconocemos que, si bien es apremiante el interés público de investigar para imputar reincidencia, dicho interés debe ceder una vez transcurren los 10 años para que al peticionario se le reconozca su expectativa de intimidad, así como su derecho a proteger su vida

privada, y evitar ataques abusivos a su honra. En *Pueblo v. Falú Martínez,* 116 DPR 828, 837 (1986), el Tribunal Supremo le reconoció el derecho a la intimidad a los propios confinados que aún no habían completado su condena. Ello por entender que, el derecho a la intimidad es consubstancial al principio de inviolabilidad de la dignidad del ser humano y no es un derecho abstracto. En particular determinó que nuestra Constitución, aunque tuvo a la federal por modelo, se fraguó en época reciente y ha podido ser más explícita en cuanto al reconocimiento de derechos que, en lo que respecta a la Constitución federal. Por ello podemos ir más allá de las fronteras limitativas de la jurisprudencia federal.

En *Weber Carrillo v. ELA et al.,* 190 DPR 688, 700 (2014), el Tribunal Supremo expresó que, el derecho a la intimidad goza de la más alta jerarquía en nuestro ordenamiento constitucional y aplica *ex propio vigore* (citando *Lopez Tristani v. Maldonado* 168 DPR 838, 849 (2006); *Arroyo v. Rattan Specialites Inc.*, 117 DPR 35, 64 (1986). Allí, al expresarse sobre el poder investigativo del Estado determinó que, el ejercicio de tal autoridad no queda al margen de los postulados constitucionales que informan nuestro ordenamiento.

Recalcamos que, en este caso, no existe posibilidad de aplicar en contra del peticionario la reincidencia, por haber transcurrido más de veinticinco (25) años desde que él cumplió su sentencia, sin cometer un delito ulterior. Dictaminamos que, el derecho del Estado a retener el fichaje de las personas -que cumplieron su sentencia y que no han delinquido posteriormente- caduca al vencer el término de 10 años que establece el Artículo 74, *supra,* sobre reincidencia. Por ello colegimos que, en cumplimiento con el estatuto vigente y con la intención legislativa antes expuesta, dentro del periodo de 10 años subsiguientes al cumplimiento de una sentencia, permanece en vigor el interés apremiante del Estado de retener las fotos y huellas dactilares para los propósitos reconocidos en la legislación

antes expuesta. Sin embargo, transcurrido dicho término de caducidad, se extingue la posibilidad de usarlo en su contra. Añádase a ello que, según lo resuelto en *Pueblo v. Galindo González,* supra, transcurrido el término de 10 años, tampoco se podría utilizar convicciones anteriores y/o récord penales anteriores, para impugnar credibilidad por resultar remotas, sin valor probatorio, alguno lo cual conlleva su exclusión automática de una prueba a presentarse.

De otra parte, es de notar que, el lenguaje de la Ley 45-1983, *supra,* otorga discreción a los tribunales para autorizar la devolución de las huellas y fotografías a aquellos imputados que resultaron absueltos de delito. Así lo interpretó el Tribunal Supremo en *Pueblo v. Torres Albertorio,* supra, pág. 136, al indicar que "[l]a medida parece dejar a la discreción del tribunal la decisión de devolver al imputado absuelto las huellas digitales y fotografías tomadas."[17] Lo antes, surge además del Informe del P. del S. 749 al Senado de Puerto Rico, pág. 4, el cual en lo atinente dispone que: "[r]ecalcamos en este momento que el Tribunal Supremo de Puerto Rico ha establecido la no obligatoriedad de devolver huellas y fotografías cuando ha mediado un fallo condenatorio. Así quedó establecido en el caso de <u>Archevali Shuck,</u> supra. En el proyecto ante vuestra consideración, aunque no se hace absolutamente mandatoria la devolución, sí debe entenderse que corresponde al ministerio fiscal demostrar, ante la petición de devolución, que el estado tiene razones válidas que justifican la retención de huellas y fotografías."

Basado en lo anterior, colegimos que en este caso el Estado no nos ha puesto posición para identificar circunstancias apremiantes. De hecho, de un examen del tracto procesal, surge

---

[17] Véase, además, J.J. Álvarez González, <u>Derecho Constitucional de Puerto Rico y Relaciones Constitucionales con los Estados Unidos</u>, Bogotá, Editorial Temis S.A., 2010, pág. 773

que, el Estado tampoco se opuso al petitorio, a pesar de la orden emitida por el TPI para que expusiera su posición sobre la solicitud interpuesta por el peticionario. Añádase que un certificado negativo de antecedentes penales demuestra la misma información -la ausencia de un récord penal- sin distinguir, si la persona fue absuelta, fue indultada, o si recibió el certificado por motivo de una resolución emitida por el tribunal, según autoriza la Ley 45-1983. Conforme a la normativa antes expuesta, existe un deber del Estado de justificar -mediante prueba convincente- las razones para retener las fotografías y huellas, en aras de crear un balance entre la seguridad pública y los derechos constitucionales de los ciudadanos afectados y el interés de promover una verdadera rehabilitación con legislación que motive dicho propósito. Limitar categóricamente la devolución de las fotografías y huellas dactilares a personas que fueron indultadas o absueltas conllevaría establecer que, la consecuencia legal de borrar un expediente criminal es parcial, con efectos únicamente civiles.[18]

Nos resulta ilustrativo lo expresado por el Tribunal Supremo en *Pueblo v. Ortiz Martínez*, supra y conforme las normas de hermenéutica antes reseñadas procede su aplicación a la presente causa. Aunque reconocemos que dicho caso atiende una solicitud de sentencia suspendida, allí, el Sr. Ortiz Martínez se declaró culpable de violar la Ley de Armas de Puerto Rico, por lo cual, cumplió 18 meses de cárcel, sujeto al régimen de sentencia suspendida. Al cabo de 18 años, se declaró culpable de dos delitos menos grave bajo la Ley de Armas de Puerto Rico. Así las cosas, el Sr. Ortiz Martínez solicitó nuevamente los beneficios de una

---

[18] Véase *Pueblo v. Ortiz Martínez*, supra. A lo antes también añadimos que nos persuade lo resuelto por un panel hermano en *Pueblo v. Sierra Bermúdez* (KLAN20160644), así como en *Ex parte Sánchez Torres* (KLCE201000425). De nuestra búsqueda en el Registro de Transacciones para Tribunales (TRIB) no surge que los referidos dictámenes hayan sido objeto de revisión judicial ante el Tribunal Supremo.

sentencia suspendida. En apoyo a su petitorio, suministró un Certificado Negativo de Antecedentes Penales expedido por el Superintendente de la Policía, junto a varias cartas de vecinos y compañeros de trabajo que acreditaban su sentido de responsabilidad y buen carácter. En respuesta, el TPI denegó su solicitud, por entender que, la convicción anterior lo descalificó automáticamente de los beneficios de sentencia suspendida, a tenor de la Ley Núm. 259 de 3 de abril de 1946, Ley de Sentencia Suspendida y Libertad a Prueba. Ante la solicitud del Sr. Ortiz Martínez, el Tribunal Supremo revocó al foro impugnado y resolvió que, una convicción previa -que fue eliminada del Certificado de Antecedentes Penales- no constituye un impedimento para que este pudiese solicitar los beneficios de sentencia suspendida. En su análisis, nuestro más Alto Foro expuso:

> [d]e ese modo, logra plena virtualidad la filosofía consagrada en la ley --congruente con un enfoque moderno de rehabilitación-- de que el peticionario nunca fue acusado ni convicto del delito. Ciertamente, tanto el procedimiento judicial como el trámite administrativo establecidos [sic] en la ley vienen a llenar una laguna y a remediar una situación de injusticia que pesaba sobre aquellos ciudadanos que años atrás incurrieron en delitos, pero que después han mantenido una conducta ejemplar en nuestra sociedad. Como consecuencia de ese trámite, los tribunales no pueden tomar en consideración las convicciones así borradas. No puede darse la anomalía de que mientras de un lado el Superintendente de la Policía certifica negativamente, por otro lado, el tribunal acuda a sus archivos para resucitar esas convicciones. *Pueblo v. Ortiz Martínez,* supra, págs. 831-832.

En resumen y atinente a la presente causa, no surge del expediente que, transcurrido el término de caducidad para imputar la reincidencia, el Estado haya demostrado tener un interés apremiante, superior al derecho que cobija al peticionario, a que se respete y se proteja su intimidad. Recalcamos que, en el presente caso, el peticionario cumplió su sentencia y, tras 25 años sin haber vuelto a delinquir, le fue eliminada la convicción por agresión agravada de su expediente criminal. No hallamos fundamento

alguno para denegar la entrega de sus fotografías y huellas, dadas las circunstancias antes detalladas y ante la imposibilidad de que él sea incurso en reincidencia. Ello, debido a que, ha transcurrido más del doble del tiempo que establece el Artículo 74 del Código Penal, *supra,* para poder tomar en cuenta un delito anterior.

Reconocemos que el Estado tiene un interés apremiante de combatir la criminalidad y de proteger la seguridad pública. De hecho, no albergamos duda que ante los estatutos vigentes dicho interés permanece en todo su vigor y se sobrepone al derecho de la persona que haya cumplido su sentencia por 10 años subsiguientes a dicho cumplimiento. Así se arguye en los casos citados por la parte recurrida. Sin embargo, conforme las normas de hermenéutica que permiten un análisis dirigido a que se produzca una solución cónsona con la idea animadora del derecho, nos encontramos en posición para precisar lo distinguible de la controversia ante nos. Resulta que transcurrido el referido periodo de caducidad, ese interés del Estado interfiere con el derecho fundamental del peticionario a la intimidad. En su consecuencia, resulta necesario aplicar el escrutinio estricto, a modo de que, el Estado demuestre que en aras de salvaguardar su interés apremiante era necesario retener el fichaje del peticionario.[19]

Tras realizar el análisis de rigor constatamos que, a una persona que cumplió su sentencia hace más de 25 años, que no es susceptible de incurrir en reincidencia debido al tiempo transcurrido desde su convicción previa, que no ha vuelto a delinquir, que goza de buena reputación y a quien le fue eliminada la convicción de su récord penal, tiene un derecho a la intimidad que puede verse afectado mientras la Policía retenga sus fotografías y huellas dactilares. A lo antes se añade que, el Estado no precisó

---

[19] Véase además lo resuelto en *U.S. v. Kalish* 271 F.Supp. 968 (DC Puerto Rico).

cuál es la justificación para retener tales documentos, salvo catalogarlos como "un instrumento investigativo indispensable" y una herramienta adecuada "para investigar y combatir la criminalidad".[20] Entiéndase que, el Estado no demostró que su interés apremiante superó el escrutinio constitucional estricto ante las circunstancias particulares del caso ante nos. Nuevamente, no albergamos duda de que el escrutinio y el balance justiciero resultaría distinto si no hubieran pasado más de 10 años desde el cumplimiento de la sentencia ya que durante dicho periodo el Estado retiene la facultad, la autoridad y el deber de procesar posibles reincidencias en cumplimiento de nuestro ordenamiento jurídico. A la luz de lo esbozado y ante las circunstancias particulares de este caso, concluimos que, los errores señalados se cometieron por lo que se reúnen los criterios al amparo de la Regla 40 de nuestro Reglamento, *supra*, que justifican la expedición del auto de *certiorari*. Mantener en vigor el dictamen impugnado atenta contra el derecho a la intimidad del peticionario y constituye un fracaso irremediable a la justicia.

**IV.**

Por los fundamentos expuestos, expedimos el auto de *certiorari,* revocamos la *Resolución* impugnada y ordenamos al Estado devolver al peticionario sus fotografías y huellas dactilares.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones. La Jueza Cintrón Cintrón disiente sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[20] Véase, *Escrito en Cumplimiento de Orden*, págs. 9 y 14.