EL PUEBLO DE PUERTO RICO, recurrido, *v.* WILLIAM ORTIZ MARTÍNEZ, acusado y peticionario.

*Número:* CE-85-673          *Resuelto:* 16 de junio de 1989

*Jorge V. Toledo Irizarry* y *Miguel A. Cabrera*, abogados del peticionario; *Rafael Ortiz Carrión, Procurador General, Justo Gorbea Varona, Subprocurador General,* y *Marjorie Rivera Rodríguez, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

## I

Por hechos ocurridos el 11 de octubre de 1966, William Ortiz Martínez fue acusado de violar el Art. 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 418. Previa alegación de culpabilidad, el 30 de junio de 1967 el Tribunal Superior, Sala de Bayamón (CR-66-578), lo condenó a cumplir diez y ocho (18) meses de cárcel, sujeto al régimen de sentencia suspendida. Cumplió así dicha sentencia.

Transcurrió el tiempo. Al cabo de diez y ocho (18) años y tres (3) meses —12 de enero de 1985— Ortiz Martínez poseyó y portó ilegalmente un revólver, por lo cual el 4 de febrero de 1985 fue acusado ante el Tribunal Superior, Sala de San Juan, de infringir los Arts. 6 y 8 de la Ley de Armas de

Puerto Rico, 25 L.P.R.A. secs. 416 y 418. El 20 de mayo de 1985 se declaró culpable de violar los Arts. 6 y 7 de dicha ley, 25 L.P.R.A. secs. 416 y 417, ambos delitos menos graves. El ilustrado foro de instancia (Hon. Elpidio Batista Ortiz, Juez) aceptó la alegación y lo refirió a un oficial probatorio de la Administración de Corrección para un informe presentencia. Oportunamente, éste rindió un informe favorable y recomendó la suspensión de la sentencia. Mediante información suministrada por el propio Ortiz Martínez, se consignó en el informe su convicción previa.

Ante esa situación, el tribunal indicó que tenía dudas de si esa convicción anterior lo descalificaba automáticamente de los beneficios de una sentencia suspendida de acuerdo con lo dispuesto en el Art. 2 de la Ley Núm. 259 de 3 de abril de 1946, según enmendada, 34 L.P.R.A. sec. 1027. Ortiz Martínez produjo un Certificado Negativo de Antecedentes Penales expedido por el Superintendente de la Policía el 11 de marzo de 1988 y, además, diversas cartas de vecinos y personas de su trabajo, acreditativas de su sentido de responsabilidad y buen carácter.(1)

Finalmente, el tribunal de instancia denegó su pedido por entender que la ley lo excluía del régimen de sentencias suspendidas. Lo condenó a una reclusión de seis (6) meses de cárcel en cada caso, a cumplirse concurrentemente.

A solicitud de Ortiz Martínez, mediante trámite de orden de mostrar causa, revisamos.

## II

En síntesis, el peticionario sostiene que la aplicación literal de la Ley de Sentencia Suspendida —sin considerar una serie de circunstancias que le benefician— representa un

---

(1) Suscritas por Danol A. Morales, Presidente de la Cervecería Corona, Inc.; Jesús Miguel Rosario, en representación de la Cooperativa de Ahorro y Crédito, y sus vecinos Milton Cruz, Domingo Ortiz y Víctor M. Cotto.

castigo cruel e inusitado. A juicio suyo, no debió el tribunal tomar en cuenta una convicción ocurrida diez y ocho (18) años atrás, en particular cuando la misma no aparece en el récord de antecedentes penales obrantes en los archivos de la Policía.

Por su parte, en su comparecencia el Procurador General señala que la alegación de culpabilidad fue libre y voluntaria, previa las advertencias legales. Sin embargo, acepta la expedición del Certificado Negativo de Antecedentes Penales, aunque nos indica desconocer "si la omisión de señalar el delito previamente cometido en dicho certificado es por error o debido a que mediante el procedimiento dispuesto en la Ley Núm. 108 del 21 de junio de 1968, 34 L.P.R.A. 1731–1733, según enmendada, se eliminó tal convicción de su record". Escrito para mostrar causa, pág. 4.

A renglón seguido y a título de pregunta nos expone:

. . . si el hecho de reflejar el Certificado de la Policía un récord penal limpio ello es indicativo de que para *todos los efectos legales el delito ha quedado borrado, o si el efecto del procedimiento creado por la referida Ley Núm. 108, supra, es parcial.* En este caso no contamos con una Exposición de Motivos que nos arroje luz sobre la interrogante. Esto es, si el efecto de dicha Ley Núm. 108 es solamente a los efectos civiles o si se extiende para incluir la concesión de otra sentencia suspendida.

De operar a todos los efectos legales, resultaría entonces improcedente considerar la convicción del año 1966 a los efectos de concederle otra sentencia suspendida. (Énfasis suplido.) Escrito para mostrar causa, pág. 4.

Finalmente nos dice que la Ley de Sentencia Suspendida no autoriza la concesión de una sentencia suspendida por el hecho de que se le haya eliminado del récord penal la convicción a un ex convicto de delito grave.

## III

■ No se cuestiona en este recurso el carácter alterno del régimen de sentencia suspendida que, en esencia, persigue su cumplimiento sin reclusión en prisión y se inspira en un propósito rehabilitador con "énfasis a la aptitud del individuo de convertirse en un miembro útil de la sociedad". *Vázquez v. Caraballo*, 114 D.P.R. 272, 275 (1983); *Martínez Torres v. Amaro Pérez*, 116 D.P.R. 717 (1985).

■ Como tal, su concesión tiene características de un privilegio y no de un derecho, a ser discrecionalmente conferido por el Tribunal. *Pueblo v. González Olivencia*, 116 D.P.R. 614 (1985); *Pueblo v. Álvarez Maurás*, 100 D.P.R. 620 (1972); *Pueblo v. Martínez Rivera*, 99 D.P.R. 568 (1971); *Pueblo v. Rivera*, 79 D.P.R. 880 (1957); *Martínez Torres v. Amaro Pérez*, supra.

■ Aunque su denegatoria goza de la presunción de ser justa y correcta —*Pueblo v. Pérez Bernard*, 99 D.P.R. 834 (1971)— aquí no lo es. Veamos.

## IV

■ Si bien el Art. 2 antes aludido provee[2] que una persona convicta previamente por un delito grave —que ha disfrutado de una sentencia suspendida— no tiene derecho pos-

[2] En lo pertinente señala:
"En los casos de delito menos graves . . . el Tribunal de Primera Instancia podrá, asimismo, suspender los efectos de la sentencia cuando la misma sea de reclusión únicamente, y ordenará que la persona sentenciada quede en libertad a prueba siempre que, al tiempo de imponer dicha sentencia, concurran *todos* los requisitos que a continuación se enumeran:
"(1) Que dicha persona, con anterioridad a la fecha en que se intente suspender la sentencia dictada, no hubiere sido convicta, sentenciada y recluida en prisión por delito grave alguno con anterioridad a la comisión del delito por el cual fuere procesada, y a la cual no hubieren suspendido los efectos de una sentencia anterior por delito grave . . . ." (Énfasis suplido.) 34 L.P.R.A. sec. 1027.

teriormente a los beneficios de una sentencia suspendida —si nuevamente es convicta por un delito menos grave— ese mandato hay que leerlo en armonía con la filosofía que inspiró la legislación —*in pari materia*— sobre eliminación de convicciones de delitos menos graves y graves en los expedientes y archivos de la Policía.

Es menester, pues, para fines de una justa decisión, el análisis integral del diseño legislativo —eminentemente de rehabilitación— prevaleciente en la actualidad.

La Ley Núm. 108 de 21 de junio de 1968, según enmendada, 34 L.P.R.A. sec. 1731 *et seq.*, regula la materia sobre eliminación de convicciones. Originalmente el estatuto sólo autorizaba la eliminación del récord en casos de delitos menos graves, una vez transcurridos diez (10) años. Sin embargo, enmiendas posteriores, en 1975 y 1983, redujeron ese término a cinco (5) años y autorizaron la eliminación de ciertos delitos graves al cabo de quince (15) años. De hecho, al presente, las convicciones por delitos menos graves — transcurridos diez (10) o más años— pueden ser eliminadas mediante un trámite administrativo directo ante el Superintendente de la Policía.

El estudio de los antecedentes de esta ley refleja que el legislador la estableció con el propósito de que un ciudadano convicto de delito menos grave —o algunos graves que no impliquen depravación moral— transcurridos cinco (5) y quince (15) años respectivamente, si ha observado buena conducta durante dicho período, pueda acudir al Tribunal de Distrito y solicitar, *ex parte*, una orden para eliminarlos de su récord penal.

El objetivo principal original —que late vivamente a través de sus enmiendas— es que la "medida ayudará y será un estímulo para rehabilitación de personas que han incurrido en alguna falta y luego mantienen una buena conducta

en la comunidad". Informe de 27 de mayo de 1968 de la Comisión de lo Jurídico Penal del Senado; Informe de la Comisión de lo Judicial de la Cámara de Representantes de 24 de mayo de 1968. Aunque el historial de la Ley Núm. 108, *supra*, es escaso, otros proyectos que no tuvieron su suerte nos orientan sobre las razones que la inspiraron. A tal efecto, en 1957, durante la Primera Sesión Ordinaria de la Tercera Asamblea Legislativa, se presentó el P. del S. 169; en 1962 se aprobó el P. de la C. 144, pero no gozó del endoso y de la firma del Gobernador, y en 1964 se consideró el P. de la C. 1100. Además del P. de la C. 408 —que fuera presentado en 1966— en 1968 se concibió el P. de la C. 1020, con igual enfoque, aunque limitado a convicciones por alterar la paz.

El P. del S. 169 de 14 marzo de 1957 consignaba:

> Es de conocimiento general que hay un sinnúmero de ciudadanos en Puerto Rico cuyo record de conducta personal tiene anotada la comisión de delitos menos graves (*misdemeanors*) que, no conllevando deformación moral, sin embargo, les ocasiona grandes inconveniencias para conseguir trabajo lucrativo y honesto, para dedicarse al ejercicio de ocupaciones muy decorosas, para actividades de la vida civil que redunden en beneficio de la comunidad, y hasta para efectuar viaje al extranjero en relación con los cuales se les examine el record de su conducta.
>
> Estas inconveniencias no tienen en realidad razón de ser cuando la conducta de tales ciudadanos posterior a su delincuencia, por espacio de un razonable período de tiempo y hasta esta fecha ha sido ejemplar y provechosa. Por virtud de las consideraciones que anteceden.

El P. de la C. 144 de 1962 en su exposición de motivos dispone:

> En Puerto Rico existen muchas personas que por ignorancia de las proyecciones y consecuencias futuras de una sentencia por alterar la paz pública aceptaron declararse culpables de dicho delito siendo inocentes, o habiendo hecho declaración de inocencia, luego aceptaron un fallo por alterar la paz sin

apelar la misma ante Tribunales Superiores, por considerar que la multa impuesta era, en términos de dinero, una suma razonable comparada con los gastos en que se hubiere incurrido y el tiempo que se hubiere invertido en caso de interponer una defensa o de radicar una apelación.

Al correr de los años dichas personas han descubierto que dichas sentencias por alterar la paz en muchos casos han resultado en una inhabilidad para ellas ocupar puestos en el gobierno, o para adquirir licencias, entre otras, *las de poseer o portar armas,* o han limitado sus oportunidades de conseguir empleo en la industria privada.

*Con el objeto de evitar que en el futuro se perpetúe esta situación indeseable,* la Asamblea Legislativa entiende que debe establecerse un procedimiento judicial . . . . (Énfasis suplido.)

■ Resulta, pues, que el estatuto que nos ocupa tuvo su origen en las implicaciones jurídicas y socioeconómicas negativas que, según la visión del legislador, tenía una alegación de culpabilidad o convicción en el delito de alterar la paz pública sobre un segmento de nuestra ciudadanía. Con el tiempo, el concepto fue ampliándose hasta extenderse a ciertos delitos graves.

■ Aunque los fundamentos consignados en el primer párrafo copiado de la Exposición de Motivos del P. de la C. 144 —sobre alegaciones de culpabilidad de personas que eran inocentes o de personas que aceptaron un fallo adverso sin entablar apelación por razones de inconveniencias o de tipo económico— pudieran tener alguna validez, lo cierto es que la razón principal que animó su aprobación final *fue el reconocimiento legislativo de que el ser humano muchas veces tiende a superar aquellas actuaciones y conductas ilegales del pasado, y que compete al Estado proveer los mecanismos necesarios para una total rehabilitación.* Esto se hace evidente si consideramos que la filosofía que informa esta medida cobra validez y vigencia aun en aquellos casos en que desde el punto de vista procesal y sustantivo la con-

vicción es la única vía que en derecho un tribunal de justicia, a cualquier nivel, viene obligado a dictaminar. La tendencia moderna de rehabilitación total no se funda solamente en la posibilidad de una injusticia judicial.

■ En resumen, la Ley Núm. 108, *supra*, se funda en las consecuencias a posteriori una vez ejecutada una sentencia penal. No intenta anularla, dejarla sin efecto o corregirla. Por el contrario, parte del supuesto de que la misma fue legal, correcta y cumplida. Su efecto principal es borrar las consecuencias jurídicas y socioeconómicas que en nuestra sociedad representa la existencia permanente de un récord penal. Se trata de una acción de carácter remedial encaminada a proteger y a hacer valer, de manera más efectiva, los derechos civiles de un ciudadano.

■ Aparte del requisito del transcurso de tiempo y la demostración de buena reputación, las convicciones objeto de la solicitud no pueden haber implicado *depravación moral*. El término no está explicado en la ley, como tampoco en otras leyes en las que se incorpora.[3] Resultaría ambicioso definirlo. Sin embargo, por vía de ilustración, reiteramos nuestro pronunciamiento en *Morales Merced v. Tribunal Superior*, 93 D.P.R. 423, 430 (1966):

> En general la [depravación moral la] consideramos como un estado o condición del individuo, compuesto por una deficiencia inherente de su sentido de la moral y la rectitud; en que la

---

[3] Por vía de ejemplo, el concepto lo encontramos con ciertas variaciones en la Constitución de Puerto Rico como causa de residencia, Art. III, Sec. 21, Const. E.L.A., L.P.R.A., Tomo 1; como conducta que crea vacante de un funcionario público, 3 L.P.R.A. sec. 556; como motivo de desaforo de un abogado, 4 L.P.R.A. sec. 735, y como razón de inhabilitar a un ciudadano para servir como jurado, Regla 96(d) de Procedimiento Criminal, 34 L.P.R.A. Ap. II. El Art. 40 de la Ley Núm. 432 de 15 de mayo de 1950 —derogada por la vigente Ley de la Judicatura del Estado Libre Asociado de Puerto Rico— proveía como motivo de destitución de un juez el incurrir en "cualquier delito que implique depravación moral . . .". 1950 Leyes de Puerto Rico 1147.

persona ha dejado de preocuparse por el respeto y la seguridad de la vida humana y todo lo que hace es esencialmente malo, doloso, fraudulento, inmoral, vil en su naturaleza y dañino en sus consecuencias.

El Diccionario de la Lengua Española, en su decimaoctava edición, nos dice que la voz "Depravar", significa viciar, adulterar, corromper, y que "Depravadamente", significa malvadamente, con malicia suma.

El Diccionario Terminológico de Ciencias Médicas, 8va. ed. Salvat, Barcelona, define Depravación así: "(de depravarse, viciar). Deterioración, cambio en peor sentido, perversión, especialmente en las sensaciones."

Un acto que está permitido y es lícito siempre que se cumpla con cierto requisito de Ley, *como lo es la portación de armas cargadas o descargadas, no puede considerarse que implica depravación moral al realizarse sin cumplirse con el requisito de la licencia. Desde luego, debe considerarse ilegal y malo porque está prohibido por ley, no porque sea un acto inherentemente inmoral.* Si lo fuera el Derecho positivo jamás lo permitiría en manera alguna. (Énfasis suplido.)

▆ Aclarado el ámbito de la Ley Núm. 108, *supra*, expongamos sus efectos. El dictamen del Tribunal de Distrito ordenará al Superintendente de la Policía y al custodio de los récord criminales de dicho Cuerpo la eliminación de las convicciones del récord penal interesadas. De igual forma, deberá dirigirse al Secretario del tribunal o a los tribunales en que se originaron.

A partir de ese mandato, las convicciones serán eliminadas de todo registro y de toda inscripción, constancia o referencia que exista bajo la custodia de los funcionarios antes indicados, quedando prohibido aludirlas o certificarlas directa o indirectamente. De ese modo, logra plena virtualidad la filosofía consagrada en la ley —congruente con un enfoque moderno de rehabilitación— de que el peticionario nunca fue acusado ni convicto del delito. Ciertamente, tanto el procedimiento judicial como el trámite administrativo establecidos en la ley vienen a llenar una laguna y a remediar

una situación de injusticia que pesaba sobre aquellos ciudadanos que años atrás incurrieron en delitos, pero que después han mantenido una conducta ejemplar en nuestra sociedad. Como consecuencia de ese trámite, los tribunales no pueden tomar en consideración las convicciones así borradas. No puede darse la anomalía de que mientras de un lado el Superintendente de la Policía certifica negativamente, por otro lado el tribunal acuda a sus archivos para resucitar esas convicciones.

Resolvemos que, en su verdadero alcance, el Art. 2 de la Ley de Sentencia Suspendida, *supra*, no priva a una persona de sus beneficios si bajo los cauces legales disponibles ha logrado eliminar su convicción de delito grave y posee un Certificado Negativo de Antecedentes Penales legítimamente expedido por el Superintendente de la Policía. Después de todo, los efectos de la Ley Núm. 254 de 27 de julio de 1974 (34 L.P.R.A. sec. 1725), reguladora de los Certificados de Antecedentes Penales archivados en la Policía —que únicamente puede cubrir sentencias *condenatorias*— van más allá del ámbito civil. Carecería de propósito que el legislador autorizara su eliminación y su certificación negativa si todavía pudieran utilizarse por los tribunales.

Adviértase que la Ley Núm. 254, *supra*, autoriza a la Policía a expedir estos certificados únicamente en relación con *sentencias condenatorias*. Cuando no existen, se expide un certificado *negativo*. 34 L.P.R.A. secs. 1725–1725e.

Finalmente, no podemos olvidar que en este diseño integral la Ley Núm. 45 de 1ro de junio de 1983 (25 L.P.R.A. sec. 1151) faculta a la Policía a tomar huellas digitales y fotografías a la persona que se le ha imputado la comisión de un delito *grave*. Si resulta absuelto, salvo "circunstancias especiales", deberán ser devueltas. Si se justifica retenerlas, deberán mantenerse con carácter "confidencial, para uso exclu-

sivo de la Policía, y no deberá divulgarse como parte del récord de arresto o certificados de conducta de dicha persona". *Pueblo v. Torres Albertorio*, 115 D.P.R. 128, 137 (1984).

## IV

A la luz de lo expuesto, dos (2) son las alternativas decisorias. Una, otorgar entero crédito evidenciario al certificado negativo de la Policía bajo la premisa de corrección y de legitimidad que acompañan su expedición. Según esta premisa, no debió el ilustrado foro de instancia negar los beneficios de la sentencia suspendida. Menos, tomar en consideración la convicción de hace diez y ocho (18) años —al presente veintiún (21) años— existente únicamente en los archivos del Tribunal Superior, Sala de Bayamón. La segunda opción, en vista de que de los autos no surge claramente en virtud de qué trámite se originó dicho certificado negativo, abstenernos prudencialmente de pasar juicio final al respecto. Acogemos esta última ruta.

*Es aconsejable remitir al foro de instancia el asunto para que, en virtud de nuestros pronunciamientos, aclare este extremo y resuelva conforme el espíritu que animó la legislación sobre la eliminación de convicciones.*

El Juez Asociado Señor Ortiz no intervino.