ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| JAYLEN HERNÁNDEZ VÁZQUEZ<br><br>Recurrente<br><br>V.<br><br>NEGOCIADO DE LA POLICÍA DE PUERTO RICO<br><br>Recurrido | KLRA202400410 | Revisión procedente del Negociado de la Policía de Puerto Rico<br><br>Caso Policía de PR: SAIC-NILIAF-DRAEL-7-1423<br><br>Sobre:<br>Revisión Administrativa – Revocación Licencia de Armas |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez

**Figueroa Cabán, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 30 de septiembre de 2024.

Comparece la señora Jaylen Hernández Vázquez, en adelante la señora Hernández o la recurrente, quien solicita que revoquemos la *Resolución* emitida el 17 de mayo de 2024 y notificada el 22 del mismo mes y año. Mediante la misma, el Negociado de la Policía de Puerto Rico, en adelante el NPPR o el recurrido, declinó devolver la licencia de armas a la recurrente.

Por los fundamentos que expondremos a continuación, se revoca la *Resolución* recurrida.

-I-

Según surge del expediente, el Tribunal de Primera Instancia, Sala de Fajardo, en adelante TPI, ordenó a la Policía de Puerto Rico "devolver las armas de fuego a Jaylen Hernández Vázquez conforme a lo dispuesto en el Art. 213 de la Ley 168 de 2019".[1]

_____
[1] Apéndice de la recurrente, pág. 37.

Número Identificador

SEN2024_____

Sin embargo, el NPPR notificó a la señora Hernández que no renovaría la licencia del arma, en virtud de lo establecido en el artículo 2.09 de la *Ley de Armas de Puerto Rico*, en adelante Ley Núm. 168-2019.[2]

Inconforme, la señora Hernández solicitó la celebración de una vista administrativa.[3]

A la vista compareció, como único testigo, la agente Dimary Álvarez Burgos, en adelante la agente Álvarez, quien tuvo a su cargo la investigación de la licencia de armas. En síntesis, recomendó no renovar la licencia de armas porque en los sistemas electrónicos administrados por el NPPR y el Departamento de Justicia, surge que la recurrente fue convicta por el delito de violación a la *Ley de Sustancias Controladas* con una probatoria de dos años. A su entender, ante la existencia de un delito grave, la Ley Núm. 168-2019 dispone la revocación de las licencias de armas, aunque la convicción se haya eliminado.[4]

En dicho contexto procesal, el NPPR declaró no ha lugar la petición de la señora Hernández y ordenó "que no se le devuelva la licencia de armas". Su determinación se fundamentó en las siguientes determinaciones de hechos:

1. Surge del expediente que para la fecha del 9/1/2022, la peticionaria fue arrestada por Ley 54 caso consultado con la fiscal Daphne Franco quien indicó radicar cargos ante el juez José Caballero del Tribunal de Fajardo, determinando causa y fijando fianza de $4,500 la cual prestó. Le fue ocupada el arma registrada y la licencia de Portación de Armas con detalles en querella 2022-12-019-01090.

---

[2] *Id.*, pág. 1.
[3] *Id.*, pág. 2.
[4] *Transcripción de Vista Administrativa*, págs. 2 y 20-21.

2. Surge de la investigación realizada por la Agte. Dimarie Álvarez Burgos 19112, agente investigadora de la División de Armas e Inspección de Armerías y Polígonos que la peticionaria en la búsqueda en los Sistemas de la Policía de Puerto Pico presenta acusación y convicción para el año 2010 por la Ley 404 "Sustancias Controladas" (delito grave), por la cual cumplió dos años de probatoria información que la peticionaria marcó en la negativa en el formulario de Entrevista al Ciudadano Investigado, recomendando desfavorable al no cumplir con los requisitos establecidos en ley.

3. Surge del expediente orden de protección OPA-2022-027132 expedida el 2 de septiembre de 2022 con vigencia hasta el 15 de septiembre de 2022 por el juez José A. Caballero López donde la parte peticionada es la peticionaria.

4. Surge de la vista administrativa Resolución sobre Archivo que la referida orden expedida por la juez Annette Marie Santiago Díaz por desistimiento voluntario de la parte peticionaria con fecha del 15 de septiembre de 2022.[5]

En desacuerdo, la recurrente presentó una *Moción en Solicitud de Reconsideración*, en la que, en síntesis, aduce que procede la devolución de la licencia de armas porque aquella "llevó a cabo un proceso judicial de eliminación de antecedentes penales".[6]

Transcurrido el término sin que el recurrido se expresara en cuanto a la reconsideración, la señora Hernández comparece ante este foro mediante *Recurso de Revisión* y alega la comisión de los siguientes errores:

ERRÓ LA POLICÍA DE PUERTO RICO AL REVOCAR LA LICENCIA DE ARMAS DE LA RECURRENTE POR MOTIVO DE ESTA HABER TENIDO CONVICCIÓN DE DELITO, CUANDO DICHA CONVICCIÓN FUE ELIMINADA CONFORME A DERECHO.

ERRÓ LA POLICÍA DE PUERTO RICO AL REVOCAR LA LICENCIA DE ARMAS, TOMANDO EN CONSIDERACIÓN UNA CONVICCIÓN ELIMINADA, CONTRARIO A LO RESUELTO EN *MUÑOZ TORRES V. SUPERINTENDENTE*, 125 DPR 603 (1990) Y OTROS.

---

[5] Apéndice de la recurrente, págs. 3-7.
[6] *Id.*, págs. 8-36.

Luego de revisar los escritos de las partes, la copia certificada del expediente administrativo, la transcripción de la grabación de la vista y los documentos que obran en autos, estamos en posición de resolver.

-II-

A.

La revisión judicial de las decisiones administrativas tiene como fin primordial delimitar la discreción de las agencias, para asegurar que ejerzan sus funciones conforme la ley y de forma razonable.[7] Ahora bien, es norma reiterada "que los tribunales apelativos debemos conceder deferencia a las determinaciones de las agencias administrativas, por razón de la experiencia y el conocimiento especializado que éstas poseen sobre los asuntos que se les han delegado".[8] A esos efectos, la revisión judicial comprende tres aspectos, a saber: (1) si el remedio concedido fue apropiado; (2) si las determinaciones de hecho están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si se sostienen las conclusiones de derecho realizadas por la agencia.[9]

Por consiguiente, "quien impugne las determinaciones de hechos de una agencia tiene el

---

[7] *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 114-115 (2023); *Fuentes Bonilla v. ELA et al.,* 200 DPR 364 (2018); *Unlimited v. Mun. de Guaynabo*, 183 DPR 947, 965 (2011).
[8] *Hernández Feliciano v. Mun. Quebradillas*, *supra*, pág. 114.
[9] *Hernández Feliciano v. Mun. Quebradillas*, *supra*, pág. 115; *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839-840 (2021); *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020).

deber ineludible de producir suficiente evidencia para derrotar la presunción de legalidad y corrección de la decisión administrativa".[10] En ausencia de evidencia sustancial, los foros apelativos estamos llamados a otorgar deferencia a las agencias administrativas.[11]

En lo aquí pertinente, la intervención judicial debe circunscribirse a determinar si las conclusiones de derecho del organismo administrativo son correctas.[12] Ahora bien, ello no significa que el tribunal revisor tiene una facultad irrestricta para revisar las conclusiones de derecho del ente administrativo.[13] Al contrario, los tribunales deben concederle gran peso y deferencia a las interpretaciones que los organismos administrativos realizan de las leyes y reglamentos que administran, por lo que no pueden descartar libremente las conclusiones e interpretación de la agencia, sustituyendo el criterio de estas por el propio.[14] De este modo, si la interpretación de la ley o reglamento que realiza determinada agencia administrativa es razonable, aunque no sea la única razonable, los tribunales debemos concederle deferencia.[15] Más aún, los tribunales podrán sustituir el criterio de la agencia por el suyo, únicamente, cuando no encuentren

---

[10] *OEG v. Martínez Giraud*, 210 DPR 79, 118 (2022). (Opinión disidente emitida por el Juez Asociado Señor Colón Pérez, a la cual se une la Jueza Presidenta Oronoz Rodríguez).
[11] *Id.*, págs. 118-119.
[12] *OEG v. Martínez Giraud*, *supra*, pág. 89. Véase, además, *Torres Rivera v. Policía de PR*, 196 DPR 606, 627-628 (2016).
[13] *Hernández Feliciano v. Mun. Quebradillas*, *supra*, págs. 115-116; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216 (2012); *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 187 (2009); *Rivera Concepción v. ARPe*, 152 DPR 116, 122 (2000).
[14] *Hernández Feliciano v. Mun. Quebradillas*, *supra*, pág. 114.
[15] *Torres Rivera v. Policía de PR*, *supra*, pág. 628.

una base racional para explicar la determinación administrativa.[16]

**B.**

La aprobación de la Ley Núm. 168-2019 responde a la aspiración legislativa de crear un marco normativo consistente con la Segunda Enmienda de la Constitución de Estados Unidos y con las decisiones del Tribunal Supremo Federal. Así, queda claramente establecido que "en Puerto Rico el portar y poseer armas de fuego es un derecho fundamental, e individual, al igual que en el resto de la Nación".[17]

Ahora bien, la expedición de la licencia de armas de fuego está sujeta a que los peticionarios cumplan los siguientes requisitos:

(1) Haber cumplido veintiún (21) años de edad; o haber cumplido dieciocho (18) años de edad y haber juramentado como integrante del Negociado de la Policía, Policía Municipal u Oficial de Custodia del Departamento de Corrección.

(2) Tener un expediente negativo de antecedentes penales y no encontrarse acusado y pendiente o en proceso de juicio por algunos de los delitos enumerados en el Artículo 2.09 de esta Ley o sus equivalentes, tanto en Puerto Rico, como en cualquier jurisdicción de Estados Unidos, a nivel federal o en cualquier país extranjero.

(3) No ser adicto a sustancias controladas o ebrio habitual.

(4) No estar declarado incapaz mental por un Tribunal con jurisdicción.

(5) No haber sido separado de manera deshonrosa de las fuerzas armadas, de alguna agencia del orden público o por algunos de los delitos enumerados en el Artículo 2.09 de esta Ley o sus equivalentes, tanto en Puerto Rico, como en cualquier jurisdicción de Estados Unidos, o por el uso indebido de su arma de fuego.

---

[16] *Hernández Feliciano v. Mun. Quebradillas, supra,* pág. 116.
[17] Exposición de Motivos la Ley Núm. 168-2019.

(6)   No incurrir ni pertenecer a organizaciones que incurran en actos de violencia o dirigidos al derrocamiento del gobierno constituido.

(7)   No estar bajo una orden del tribunal, o haber estado en cualquier momento durante los pasados doce meses previos a la fecha de solicitud, que le prohíba acosar, espiar, amenazar o acercarse a un compañero íntimo, algún familiar de este o a persona alguna.

(8)   Ser ciudadano o residente legal de Estados Unidos de América.

(9)   No ser persona impedida por el "Federal Gun Control Act of 1968" a recibir, transportar o enviar armas de fuego o municiones.[18]

En cambio, el Estado puede rehusar expedir licencias de armas de fuego en los siguientes supuestos:

Artículo 2.09. —Fundamentos para Rehusar Expedir Licencias.

La Oficina de Licencias de Armas no expedirá licencia de armas, o de haberse expedido se revocará, la licencia de armas de cualquier persona que haya sido convicta, en Puerto Rico, en cualquier otra jurisdicción estadounidense de cualquier delito grave o su tentativa, por delito menos grave que conlleve violencia, por conducta constitutiva de violencia doméstica, según tipificada en la Ley Núm. 54 de 15 de agosto de 1989, según enmendada… En aquellos casos donde la licencia de armas sea revocada, el Comisionado procederá a ocupar las armas de fuego y/o municiones que posea la persona con licencia de armas… Tampoco se expedirá licencia alguna a… ninguna persona que haya sido convicta por alguna violación a las disposiciones de esta Ley o de las anteriores Leyes de Armas; o se revocará la licencia expedida si la persona adviniera cualquiera de estas circunstancias.[19]

## C.

En lo aquí pertinente, la *Ley para Autorizar a la Policía de Puerto Rico la Expedición de Certificados de Antecedentes Penales*, en adelante Ley Núm. 254 de 27 de julio de 1974, se incorporó a nuestro sistema de derecho en aras de conferir poderes específicos a la

---

[18] Art. 2.02 de la Ley Núm. 168-2019 (25 LPRA sec. 462a).
[19] Art. 2.09 de la Ley Núm. 168-2019 (25 LPRA sec. 462h). (Citas suprimidas).

Policía de Puerto Rico para expedir certificaciones de antecedentes penales y a su vez, conferir al Superintendente de la Policía poderes para que promulgue reglamentación conforme a estos propósitos.[20]

Es pertinente destacar, que la Ley Núm. 254 de 27 de julio de 1974 autoriza a la Policía a expedir estos certificados negativos únicamente cuando no existen sentencias condenatorias.[21]

Por otro lado, en lo que respecta a su aplicación, el Tribunal Supremo de Puerto Rico ha establecido que "carecería de propósito que el legislador autorizara [la] eliminación [de los antecedentes penales] y su certificación negativa si todavía pudieran utilizarse por los tribunales".[22] Así pues, la regulaciones para la eliminación de convicciones están arraigadas en "un enfoque moderno de rehabilitación".[23] "Como consecuencia de ese trámite, los tribunales no pueden tomar en consideración las convicciones así borradas. No puede darse la anomalía de que mientras de un lado el Superintendente de la Policía certifica negativamente, por otro lado [,] el tribunal acuda a sus archivos para resucitar esas convicciones".[24]

**D.**

Por otra parte, la *Ley del Protocolo para Garantizar la Comunicación Efectiva entre los*

---

[20] Exposición de Motivos de la Ley Núm. 254 de 27 de julio de 1971.
[21] Art. 1 de la Ley Núm. 254 de 27 de julio de 1971 (34 LPRA sec. 1725).
[22] *Muñoz, Torres v. Superintendente Policía*, 125 DPR 603, 606 (1990); *Pueblo v. Ortiz Martínez*, 123 DPR 820, 832 (1989).
[23] *Muñoz, Torres v. Superintendente Policía*, *supra*, pág. 606.
[24] *Id.*

*Componentes de Seguridad del Estado Libre Asociado de Puerto Rico y del Sistema de Información de Justicia Criminal*, en adelante Ley Núm. 143-2014, se estatuyó con "el propósito fundamental de ordenar a los distintos componentes de seguridad el establecimiento de un sistema tecnológico y procedimiento uniforme que permita el intercambio efectivo de información entre las entidades gubernamentales de manera tal que se alcance el máximo funcionamiento del Sistema de Información de Justicia Criminal".[25] En esencia, aspira a "proveer las garantías necesarias a la ciudadanía de que las entidades gubernamentales encargadas de combatir la criminalidad están realizando su trabajo de la manera más eficiente posible".

Esta pieza legislativa le impone al Comité Intergubernamental, integrado por los jefes del Departamento de Justicia; el Negociado de la Policía de Puerto Rico; la Rama Judicial de Puerto Rico; el Departamento de Corrección y Rehabilitación; el Departamento de la Familia; el Departamento de Transportación y Obras Públicas; el Negociado de Ciencias Forenses y el Departamento de Salud, la siguiente obligación:

> [A]segurarse que el sistema tecnológico y procedimiento uniforme provea la siguiente información de naturaleza criminal, tanto de delitos graves como menos graves, entre otras:
>
> a. Denuncia
>
> b. Órdenes de Arresto
>
> c. Requisitorias y Contrarequisitorias
>
> d. Determinaciones de causa en todas las etapas del procedimiento criminal, incluyendo vista de determinación de causa para arresto y vista preliminar

---

[25] Exposición de Motivos de la Ley Núm. 143-2014.

e. Sentencias

f. Minutas de vista de seguimiento en las probatorias

g. Órdenes de Protección vigentes

h. Fugas de las instituciones carcelarias del país

i. Determinaciones de Causa en alzada

j. Desacatos

k. Determinaciones sobre improcesabilidad y/o inimputabilidad al amparo de las Reglas 240 y 241 de las de Procedimiento Criminal

l. Revocaciones de Probatoria

m. Órdenes de allanamiento expedidas al amparo de las Reglas 229 a la 233 de las de Procedimiento Criminal

n. Datos de todas las personas que se encuentran bajo la supervisión de la Oficina con Antelación al Juicio

Con relación a la información incluida en el sistema de información,

[…]

El Comité tomará todas las medidas necesarias para asegurar al máximo posible la seguridad y corrección de toda aquella información que sea recopilada a través del Sistema y para la protección individual de los derechos de privacidad de acuerdo con los principios constitucionales del Estado Libre Asociado. Además, tomará todas las medidas necesarias para asegurarse… de que todo dato relativo a convicciones cuya eliminación del record [*sic*.] penal de una persona haya sido ordenado por un Tribunal competente sea efectiva y totalmente eliminada del Sistema de Información de Justicia Criminal, incluyendo pero sin que esto se entienda como una limitación, las memorias de cualesquiera computadoras utilizadas por el Sistema.[26]

**-III-**

Para la recurrente, el NPPR incidió al denegar la renovación de su licencia de arma porque, conforme a la Ley Núm. 143-2014, las convicciones eliminadas deben borrarse del Sistema de Información de Justicia

---

[26] Art. 8 de la Ley Núm. 143-2014 (4 LPRA sec. 533e).

Criminal. Debido a que su convicción por delito grave fue eliminada por orden judicial, previo a la expedición de la licencia de armas, aduce que la agente Álvarez no podía basar su investigación en una información que, aunque aparecía en el sistema, no debía estar registrada. Una información que para todos los efectos legales es inexistente. A su entender, el asunto en controversia no es discrecional del NPPR, sino que el mandato legislativo es claro: todo dato relativo a convicciones tiene que ser eliminado y carece de eficacia jurídica.

Por su parte, el NPPR sostiene que la resolución recurrida es correcta en derecho y está apoyada en evidencia sustancial que obra en el expediente. Así pues, a su entender, tiene facultad para realizar investigaciones después de haberse otorgado una licencia de armas y en el presente caso la investigación "resultó desfavorable para la recurrente, ya que tiene una convicción de delito grave por violación a la *Ley de Sustancias Controladas, supra*. Ante ello, en virtud del Artículo 2.09 de la Ley Núm. 168-2019, procedió con la revocación de la licencia de armas". Además, arguye que, aunque la Ley Núm. 314-2004, *supra*, "persigue la rehabilitación del confinado para que pueda integrarse efectivamente a la comunidad mediante empleo o autogestión, … no elimina la facultad y discreción del Comisionado de revocar una licencia de armas por incumplimiento con los requisitos estatutarios". Finalmente, afirma que el foro primario carecía de jurisdicción para ordenar la devolución del arma a la

señora Hernández porque la determinación de este asunto le compete al NPPR.

De la normativa previamente expuesta se desprende que la Ley Núm. 143-2014, *supra*, obliga al Comité a tomar las medidas necesarias para asegurarse de que todo dato relacionado a convicciones, cuya eliminación del récord penal haya sido ordenado por un tribunal competente, sea efectiva y totalmente eliminada del Sistema de Información de Justicia Criminal, incluyendo, pero sin que se entienda como una limitación, las memorias de cualesquiera computadoras utilizadas por el Sistema.

El mandato legislativo al Comité es claro, inequívoco y categórico: la información sobre la eliminación de convicciones del récord penal tramitado conforme a la ley tiene que reflejarse en el Sistema de Información de Justicia Criminal. A nuestro entender, esto significa que, culminado correctamente el trámite, dicha información carece de eficacia jurídica. En palabras de nuestro Tribunal Supremo:

> …las convicciones serán eliminadas de todo registro y de toda inscripción, constancia o referencia que exista bajo la custodia de los funcionarios antes indicados, quedando prohibido aludirlas o certificarlas directa o indirectamente. De ese modo, logra plena virtualidad la filosofía consagrada en la ley –congruente con un enfoque moderno de rehabilitación— de que el peticionario nunca fue acusado ni convicto del delito.[27]

Ahora bien, si la señora Hernández cumplió cabalmente con el procedimiento de solicitar la expedición de una licencia de armas; pero la información sobre la eliminación de las convicciones aparece en el Sistema por razones ajenas a su

---

[27] *Pueblo v. Ortíz Martínez*, *supra*, pág. 831.

voluntad; aquella no debe ser penalizada. Por tal razón, somos de la opinión, que teniendo las "manos limpias", la recurrente no debe ser privada de su derecho constitucional federal a tener armas o de su derecho, no menos constitucional, a rehabilitarse, como resultado de la ineficiencia del Comité y/o por la inercia burocrática del NPPR.

La lógica jurídica y judicial subyacente en la presente sentencia es análoga a la que aplicó nuestra más alta instancia judicial en un ámbito de nuestro ordenamiento jurídico, muy distinto al del caso de autos, a saber, el derecho hipotecario:

> …"[r]esulta inapropiado penalizar a la parte interesada por un trámite interagencial entre el Departamento de Justicia y el Registro de la Propiedad"…

> …hemos sido consecuentes en que las deficiencias en los trámites internos del Departamento de Justicia y el Registro de la Propiedad no pueden ser usados en contra de una parte que actuó correctamente dentro del marco de sus obligaciones…[28]

En consideración a lo anterior, procede revocar la resolución recurrida. Ello obedece a que no está basada en prueba que obre en el expediente. De la normativa previamente expuesta es forzoso concluir que la convicción de la señora Hernández es jurídicamente inexistente y se tiene que considerar por no puesta.

Al decir de nuestro Tribunal Supremo, carecería de propósito que el legislador autorizara la eliminación de los antecedentes penales de la señora Hernández más, sin embargo, estas pudieran utilizarse por el recurrido para denegar la expedición de una licencia de armas. En nuestra opinión, "si los

---

[28] *Matos Zayas v. Registradora de la Propiedad*, Opinión de 22 de diciembre de 2023, 2023 TSPR 148, 213 DPR____, a la pág. 14 (citas omitidas).

tribunales no pueden tomar en consideración las convicciones así borradas", el NPPR tampoco.

Nuevamente, desde la óptica del derecho administrativo, si las convicciones de la recurrente constan por error en el Sistema, ello tiene que ser jurídicamente inconsecuente, porque "un error administrativo no crea un estado de derecho que obligue a un cuerpo administrativo ni impida su corrección".[29]

Finalmente, queremos dejar claramente establecido que al adjudicar la presente controversia estimamos justo y correcto priorizar los derechos constitucionales de la señora Hernández a portar armas y a rehabilitarse, sobre consideraciones procesales relativas a la expedición de una licencia de armas.

La situación ante nos es muy similar a la de *Pueblo v. Ortíz Martínez, supra*: "…no puede darse la anomalía de que mientras de un lado el Superintendente de la Policía certifica negativamente, por otro lado el tribunal acuda a sus archivos para resucitar esas convicciones".[30]

En fin, "[c]arecería de propósito que el legislador autorizara su eliminación y su certificación negativa…"[31], si todavía pudieran utilizarse por el NPPR, para entre otras cosas, denegar la expedición de una licencia de armas a un ciudadano.

---

[29] *Magriz v. Empresas Nativas* 143 DPR 63, 71 (1997). Véase, además, *Santiago v. Depto. De la Familia*, 153 DPR 208, 218 (2001); *González v. ELA*, 167 DPR 400, 414 (2006).
[30] *Pueblo v. Ortiz Martínez, supra*, pág. 832.
[31] *Id.*

**-IV-**

Por los fundamentos previamente expuestos, se revoca la *Resolución* recurrida y se ordena al Negociado de la Policía de Puerto Rico a devolver la licencia de armas a la recurrente.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones